FORM NY-010

Jointly prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association.

Residential Contract of Sale

**WARNING:** NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW ("PLAIN LANGUAGE").
CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

**Contract of Sale** made as of 06/27/2018 BETWEEN

KATHERINE NEVILLE and NOLA THACKER
Address:                    and 37 Wildwood Road, Sag Harbor, NY, respectively
Social Security Number/ Fed. I.D. No(s):

hereinafter called "Seller" and

Stellar Development Group, LLC
Address: 9 Park Place, First Floor, Great Neck, NY 11021
Social Security Number/ Fed. I.D. No(s):

hereinafter called "Purchaser".

### The parties hereby agree as follows:

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as:
Street Address: 37 Wildwood Road, Sag Harbor, NY
Tax Map Designation:
Sec. 21  Bl.02 Lot. 013
Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (strike out inapplicable items).
BUILDING AND FIXTURES ALL AS PRESENTLY EXISTS ON THE PREMISES IN "AS IS" CONDITION.
Excluded from this sale are household furnishings and personal belongings.

3. **Purchase Price.** The purchase price is: $375,000.00
payable as follows:
(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt or which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "Down-payment"): $5,000.00
(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed:             $
(c) by a purchase money note and mortgage from Purchaser to Seller,             $
(d) balance at Closing in accordance with paragraph 7:
$370,000.00

4. **Existing Mortgage.** (Delete if inapplicable) If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:
(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of         percent per annum, in monthly installments of $         which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on
(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.
(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.
(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

5. **Purchase Money Mortgage.** (Delete if inapplicable) If there is to be a purchase money mortgage as indicated in paragraph 3(c) above:
(a) The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax, recording fees and the attorney's fees in the amount of $         for its preparation.
(b) The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest rate thereof shall not be greater than         percent per annum and the total debt service thereunder shall not be greater than $         per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to effectuate such subordination.

6. **Down-payment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Down-payment in escrow in a segregated bank account at NON-INTEREST BEARING ESCROW ACCOUNT AT CAPITAL ONE BANK
until Closing or sooner termination of this contract and shall pay over or apply the Down-payment in accordance with the terms of this paragraph. Escrowee shall (not) hold the Down-payment in an interest-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Down-payment and the party receiving the interest shall pay any taxes thereon.

If interest is not held for the benefit of the parties, the Down-payment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Down-payment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Down-payment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, non-appealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Down-payment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that, although Escrowee is holding the Down-payment for Seller's account, for all other purposes Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally agree to defend, indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Down-payment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Down-payment or any other dispute between the parties whether or not Escrowee is in possession of the Down-payment and continues to act as Escrowee.

**7. Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1000;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon not less than 3 business days' notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $500; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

**8. Mortgage Contingency.** *(Delete if inapplicable)* The obligations of Purchaser hereunder are conditioned upon issuance on or before 45 days (the "Commitment Date") of a written commitment from any Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, including an FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $900,00.00 or such lesser sum as Purchaser shall be willing to accept, at the prevailing fixed rate of interest not to exceed or initial adjustable rate of interest not to exceed ___% for a term of at least 30 years and on other customary commitment terms, whether or not conditional upon any factors other than an appraisal satisfactory to the Institutional Lender. Purchaser shall (a) make prompt application to an Institutional Lender for such mortgage loan, (b) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (c) pay all fees, points and charges required in connection with such application and loan, (d) pursue such application with diligence, (e) cooperate in good faith with such Institutional Lender to obtain such commitment and (1) promptly give Notice to Seller of the name and address of each Institutional Lender to which Purchaser has made such application. Purchaser shall comply with all requirements of such commitment (or of any other commitment accepted by Purchaser) and shall furnish Seller with a copy thereof promptly after receipt thereof. If such commitment is not issued on or before the Commitment Date, then, unless Purchaser has accepted a commitment that does not comply with the requirements set forth above, Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment

Date, in which case this contract shall be deemed cancelled and thereafter neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Down-payment shall be promptly refunded to Purchaser and except as set forth in paragraph 27. If Purchaser fails to give notice of cancellation or if Purchaser shall accept a commitment that does not comply with the terms set forth above, then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Down-payment by reason of the contingency contained in this paragraph.

**9. Permitted Exceptions.** The Premises are sold and shall be conveyed subject to: PROVIDED SAME DO NOT RENDER TITLE UNMARKETABLE

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

**10. Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b) ~~(Delete if inapplicable) All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.~~

**11. Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12. Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13. Insurable Title.** Seller shall give and Purchaser shall accept such title as: MARKETABLE TITLE FROM A REPUTABLE TITLE INSURANCE COMPANY.

that shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14. Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a BARGAIN AND SALE DEED WITH COVENANTS AGAINST GRANTOR'S ACTS deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15. Closing Date and Place.** Closing shall take place at the office of: SELLER'S ATTORNEY'S OFFICE

At 1 PM o'clock ON OR ABOUT 60 days from the receipt by Purchaser of a fully-executed contract.

**16. Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a 1 family dwelling at the date of Closing.

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17. Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

**18. Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable the following shall be apportioned as of midnight of the day before the day of Closing:

(i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

**19. Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

**20. Use or Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear or such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

**21. The Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect or the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Down-payment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22. Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23. Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Down-payment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Down-payment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24. Purchaser's Lien.** All money paid on account of this contract, and

the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. **Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to ¶7 (b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

26. **No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

27. **Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any broker in connection with this sale other than: N/A
and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience or reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This Subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

_____ Seller

_____ Seller

_____ Purchaser

_____ Purchaser

**Attorney for Seller:**
Radow Law Group, P.C.
1010 Northern Blvd., Suite 304;
Great Neck, NY 11021
Tel.: 516-338-7800
Fax: 516-589-8070
Email: info@radowlawgroup.com

**Attorney for Purchaser:**
Warren Sussman Esq
2900 Westchester Ave, Suite 405
Purchase, NY 10577
(914) 484-4878

Receipt of the down-payment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

_____ Escrowee

**Contract of Sale**

TITLE NO. _____

Thacker and Neville

TO

PREMISES

DIST. 0900
SEC. 021
BLK 02
LOT 013
COUNTY OR TOWN: Suffolk
STREET NUMBER ADDRESS: 37 Wildwood Road, Sag Harbor, NY

## RIDER ATTACHED TO AND FORMING PART OF CONTRACT OF SALE

DATE:        June 29 2018
SELLER:      Thacker
PURCHASER:
PREMISES:    37 Wildwood Road, Sag Harbor, NY

SAID PREMISES ARE SOLD AND ARE TO BE CONVEYED SUBJECT TO THE FOLLOWING:

1. **INCONSISTENT PROVISIONS:** This is a Rider containing additions or modifications to the printed Contract of Sale. If any part of this Rider is inconsistent with any part of the printed Contract or any other Rider, the provisions of this Rider shall supersede any such other provisions. The headings of paragraphs are for reference only and shall have no substantial effect or meaning in this Contract.

2. **ADDITIONAL "SUBJECT TO" PROVISIONS:** In addition to those provisions of the printed portion of the Contract, the premises are sold subject to any state of facts an accurate survey may show and to covenants, restrictions and utility easements of record, if any, and to zoning ordinances, restrictions and regulations which may affect the property which are presently in effect or which may be in effect as of the date of the closing except that Purchasers shall not be required to accept title subject to the foregoing if they shall render title unmarketable or if they shall prohibit or restrict the maintenance or use of the structure on the premises as a one family dwelling. The said premises are sold and to be conveyed subject to the following:

a)  Any state of facts an accurate survey may show provided same does not render title unmarketable;

b)  Existing covenants, restrictions, easements, consents, reservations and agreements of record, if any, provided same are not violated by the present use of the premises and do not render title unmarketable;

c)  Beams and beam rights and party walls and party wall agreements of record, if any;

d)  Possible lack of right to maintain vault or vaulted areas under the sidewalk;

e)  Rights or easements, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles, and distribution boxes in, over and upon said premises;

f)  Possible encroachments of retaining walls, bay windows, hedges, copings, cellar doors, sidewalk elevators, fences, fire escapes, and variations between record lines and fences, hedges and retaining walls, provided same does not render unmarketable;

g)  Minor variations between the record lot lines of these premises and those shown on the tax map;

h)  Standard exceptions contained in the form of title insurance policy issued by title companies, which are reputable and/or members of the New York Board of Title Underwriters.

i) Any recorded covenants, restrictions, easements or agreements which limited the use of the property provided they (1) are not now violated, (2) do not contain a clause under which the property would be forfeited if they were violated and (3) do not materially restrict the normal use and enjoyment of the property.

3. TITLE OBJECTIONS: Purchasers will deliver to Seller's attorney at least ten (10) days before the date set for closing, a written list of any objections or violations which appear on a title examination that the Purchasers obtain. If any objections or violations do appear, and Seller cannot eliminate them by the time set for the closing of title, then the Seller may, at her option, have a reasonable adjournment in order to remove such objections or violations; however, Seller is not obligated to bring any action or proceeding or to obtain any variance to perfect their title. If, after a reasonable time, Seller is unable to deliver a marketable and insurable title, the Seller shall return the down payment herein to the Purchasers, and thereafter this contract shall be null and void and neither of the parties shall bear any liability towards the other, unless Purchasers agree to accept such title as Seller may be able to convey, without reduction of the purchase price or any other liability of Seller. Notwithstanding the foregoing, Seller shall clear all items in liquidated amount, i.e., mortgages, taxes, judgments, etc.

4. NO ASSIGNMENT: This Contract may not be assigned without the prior written consent of the Seller, which shall not be unreasonably withheld.

5. PRE-CLOSING INSPECTION: Purchasers shall have the right to inspect the premises immediately prior to the closing to satisfy themselves as to the condition of the premises. The time of inspection shall be established by the parties, and said Inspector must be duly certified.

6. BROKER: Purchasers represent and warrant that they have not dealt with any realtor in connection with their introduction to the property involved herein, or for the sale thereof other than what has been stated in the contract. Purchasers agree to indemnify the Seller against and hold the Seller harmless from any and all costs and expenses, including reasonable attorneys' fees, incurred by the Sellers as a result of any claim raised by or damages awarded to any broker by reason of Purchaser's acts arising out of or in connection with this transaction or their representation in this paragraph. This paragraph shall survive the closing of title, or, if the closing does not occur, the termination of this Contract

7. CERTIFICATE OF OCCUPANCY: Sellers warrant and represents that the premises are a legal one family dwelling. Purchasers may, at their option, waive any provisions of this paragraph, in writing. In the event that Sellers do not have any Certificates of Occupancy required, and in the event that Seller is unable to deliver the appropriate Letters or Certificates as set forth herein, Purchasers shall have the right to elect to accept the premises without such Certificates or Letters or terminate this Agreement, in which case, Seller's sole liability shall be to return the contract payment to the Purchasers, and thereafter the contract shall be deemed canceled and of no further force and effect. Notwithstanding, Seller shall make every reasonable effort to obtain a Certificate of Occupancy.

8. NOTICES AND AUTHORITY TO ACT: The parties hereto designate their respective attorneys to give and/or receive notices upon their behalf and to execute and any notices, extensions, amendments or adjournments with the same force and effect as if signed by the parties themselves. All notices shall be in writing and transmitted by regular mail, hand delivery, certified mail, return receipt requested, or facsimile transmission.

9. **NON-FOREIGN PERSON AFFIDAVIT**: If the Seller is not a corporation, the Seller represents and warrants that she is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code and Seller agrees to sign an appropriate FIRPTA Affidavit at closing, containing such information as required by Section 1445 and the regulations issued thereunder.

10. **TAX COMPLIANCE**: In compliance with Section 6045 of the Internal Revenue Code, as amended the Tax Reform Act1, Purchasers and Seller represent and warrant that tax identification and social security numbers inserted at the beginning of this Contract, name and current address is accurate and complete.

11. **PROCEEDS**: At closing the proceeds due Seller must be in the form of a certified check from Purchasers drawn on a New York bank, lender's counsel's escrow account, or an official bank check of a New York bank, both payable directly to Seller or to whomever Seller or her agents direct. No endorsed checks will be accepted. If the Purchasers are individuals, no corporate checks will be accepted. Failure to comply with the provisions contained herein may be deemed by Seller to be a default by Purchasers entitling Seller to any and all remedies available.

12. **LIENS**: If the premises contracted for herein are subject to any liens, including but not limited to, inheritance, estate, franchise, dissolution, license or other similar charges, judgment liens, mechanics liens, taxes or obligations, the same shall not be deemed an objection to title, provided that the title company to which the Purchasers have applied for title insurance will, at the time of closing of title, insure against the collection of same from the premises.

13. **NO RECORDING**: This Contract may not be recorded by Purchasers.

14. **VACANT AND BROOM CLEAN**: Premises will be delivered vacant and broom clean pursuant to the terms of the contract.

15. **IDENTIFICATION OF PARTIES**: The terms Seller or Sellers and Purchaser and Purchasers and any pronouns referring to them shall be deemed to refer to the parties identified as "SELLER" and "PURCHASER" in the printed portion of this Contract headed "Parties" and use of the singular or plural form of those words herein shall not in any way change the rights or responsibilities of those parties.

16. **CONTRACT DATE**: Notwithstanding the date of the Contract inserted above, the Contract of Sale shall be deemed dated as of the date that a fully executed copy of the Contract is received by Purchaser's attorney.

17. **CONTRACT DELIVERY**: Delivery of this contract to Purchaser's attorney shall not be deemed to be an offer on the part of Seller but merely an invitation to Purchasers to make an offer. This contract shall have no effect upon Seller's right with respect to the premises nor be binding on Seller in any way unless and until Seller had executed this contract. Until execution by Seller, Seller may withdraw its invitation to Purchaser to enter into this contract.

18. **PROPERTY CONDITION DISCLOSURE ACT WAIVER:** Purchasers represent that they are familiar with the terms of Article 14 of the Real Property Law known as the Real Property Disclosure Act ("Act"). An unexecuted copy of the Disclosure Form referred to in the Act is appended to the end of this Rider. Purchasers hereby acknowledge and represent, notwithstanding the provisions of the Act, that they are fully aware of and familiar with the condition and state of repair of the premises and of all other property included in this sale, based upon Purchasers' and/or their agent's own inspection, testing and investigation thereof, which Purchasers hereby acknowledge that they

had ample time to complete. Purchasers further acknowledge and represent that they are entering into this contract based solely upon such inspections and/or investigations and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the premises or the other property included in this sale, given or made by Sellers or their representatives, and Sellers and Purchasers hereby agree that Purchasers shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing, except as otherwise set forth herein, without any reduction in the purchase price or claim of any kind of any change in such condition by reason thereof subsequent to the date of this contract. The parties further acknowledge that under the Act Purchasers were entitled to a Disclosure Statement by Sellers prior to the execution of this Contact of Sale and in the event of Sellers' failure to provide such statement, Purchasers are entitled to, and have elected to receive a $500 rebate at closing as liquidated damages and not as a penalty for Sellers' failure to provide said Disclosure Statement. Purchasers hereby waive any right of rescission of this Contact of Sale and any and all remedies provided for under the law with regard thereto. This clause of the contract shall survive closing.

19. **GENERAL OBLIGATIONS**: Notwithstanding the provisions of Section 5-1311 of the General Obligations Law, in the event the subject premises are destroyed by fire prior to the closing of title or delivery of possession to the Purchasers and said damage is deemed substantial in that a material part of said premises is destroyed, the Purchaser may elect to cancel this contract. Nothing in this paragraph shall, however, be deemed to preclude the Purchasers from consummating this contract by closing title subject to any such damage or any municipal violations resulting therefrom and assuming the necessary cost of repair. Purchaser shall get an assignment of insurance proceeds plus deductible.

20. **NO REPRESENTAIONS**: No representations or warranties have been made by the Seller as to the condition of the premises or the improvements thereon and the said premises shall be sold "AS IS" condition in all respects, normal wear and tear, between now and closing expected, except roof shall be free of leaks, and appliances, heating, and plumbing shall be in working order, however seller's liability shall be limited to $250 in the event an appliance is not functional. Seller agrees to deliver the premises vacant and broom clean. Seller makes no representation or warranty as to habitability or condition of property and/or premises other than what has been stated herein, whether local or other zoning laws or regulations permit future construction, or whether there exist code violations and a certificate of occupancy for premises. In the event that any part / portion of the Premises is not approved for a Certificate of Occupancy by any relevant governmental authority at the time of Closing, Seller may, at his election, either take those steps necessary to cure and obtain such Certificate of Occupancy as may be necessary, or, alternatively, cancel this contract and return any down payment received to Purchaser. This contract shall thereafter become null and void and of no force and effect and the seller shall then be under no obligation or liability whatsoever to the purchaser and none of the parties shall have any further claim against the other. The provisions of the contract of sale pertaining to the condition of the premises shall be extended to the date of delivery of possession.

21. **TERMITES**: The purchaser shall have the right to have a termite inspection for any wood eating insects made at his sole cost and expense. Said inspection is to be made no later than ten (10) days from the date the mortgage approval. In the event of infestation and/or damage is disclosed by

such examination and the cost of curing same exceeds $500.00, then the seller shall have the option of treating and/or repairing said condition or to cancel the contract and return the deposit made hereunder, in which event, the parties shall no longer be bound in any respect, unless purchaser elects to cure the defect and get a credit of $500.00 at the closing. If damage is under $500.00 seller shall treat the condition with one (1) year guarantee from a reputable exterminator.

22. **INSPECTION**: The purchaser shall have the right to inspect the premises 48 hours prior to and on the day of closing.

23. **APPORTIONMENT**: The seller agrees to apportion all usual adjustments including interest on the purchaser's mortgage as of the date of delivery of possession or closing, whichever is later.

24. **ESCROW**: All sums of money paid by Purchaser to Seller at the time of signing of this contract, shall be held in escrow by the attorney(s) for the Seller, and said monies will be held until title closing or Purchaser's willful default at which time, with 10 days' notice in writing, and if no written objection is received, Seller's attorney shall be authorized to pay over to the Seller all monies paid hereunder towards the Seller's damages and the Seller's attorney shall be released from all further liability upon making said payment.

25. **MARKETABLE TITLE**: In the event the Seller is unable to convey marketable title or otherwise perform Seller's obligations in accordance with the terms of this contract, the Purchasers, at Purchasers' election, shall have the right to accept such title as the Seller is able to convey, without any claim on the part of the Purchasers for abatement of the purchase price for defects or objections or the Purchasers shall have for the right to rescind this contract and upon such rescission, the Purchasers shall be entitled to a return of the amount paid at the time of the signing of the contract without interest thereon plus net title company charges, if the Purchasers have ordered a title search, or plus the reasonable cost of an abstract of title, and upon such repayment this contract shall be declared null and void and of no force and effect and the Seller shall then be under no obligation or liability whatsoever to the purchaser and none of the parties shall have any further claim against the other. Nothing herein contained shall require the seller to bring an action or proceeding or incur any expenses in order to render title marketable.

26. **DOUBLE ENDORSED CHECKS**: Notwithstanding the printed form, it is understood that the Seller will not be required to accept at the time of closing any double endorsed checks. All certified and /or teller's checks presented at the time of the closing shall be made payable to the Seller directly, unless written advice to the contrary is given to Purchaser. All checks shall be drawn on banks located within the State of New York.

27. SUBJECT TO SHORT SALE APPROVASL FROM FORECLOSING BANK.

_____     _____
Seller                       Seller

_____     _____
Purchaser                    Purchaser

-END-

## LEAD-BASED PAINT BEFORE SALE DISCLOSURE AND ACKNOWLEDGMENT FORM.

### PART I - LEAD WARNING STATEMENT

Every purchaser of any interest in residential real properly on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the Sellers' possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

### PART II - SELLER'S CERTIFICATION

Sellers have no knowledge of lead-based paint and/or lead based paint hazards in the Unit or premises. Sellers have no reports or records pertaining to lead-based and/or lead-based paint hazards in the Unit or premises.

Seller's Initials: _____ Date: _____

### PART III - PURCHASERS' CERTIFICATION

Purchasers hereby accept and acknowledge receipt of a copy of the EPA lead hazard information pamphlet entitled: "Lead Based Paint: Protect Your Family" as required under the proposed regulation published under authority of 42 U.S.C. section 1018 et seq.

Select one by initialing in appropriate place provided:

a) Purchasers have received a 10-day opportunity to conduct a risk assessment or inspection of the Unit or Premises ("Risk Assessment") for the presence of lead-based paint and/or lead based paint hazards and with the information provided from the Risk assessment has elected to proceed with the purchase of the premises or of the Shares and Lease allocated to the above-referenced Unit on the terms set forth herein. Purchasers shall deliver a copy of any Risk Assessment report to Sellers, if Purchaser have not already done so.

Purchaser's Initials: _____ Date: _____

or

b) Purchasers hereby elect to waive the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards and will proceed with the purchase of the Premises of the Shares and Lease allocated to the above-referenced Unit on the terms set forth herein. Purchasers shall deliver a copy of any Risk Assessment report to Sellers, if Purchaser have not already done so.

Purchaser's Initials _____ Date: _____

Seller _____

Purchaser _____